**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

GEORGE LEE                              *      CIVIL ACTION

VERSUS                                  *      NO. 10-1712

VENETIA MICHAEL, WARDEN                 *      SECTION "B"(4)

<u>ORDER AND REASONS</u>

Before the Court is Petitioner George Lee's ("Petitioner") objections (Rec. Doc. No. 15) to Magistrate Roby's Report and Recommendation recommending dismissal with prejudice of Petitioner's habeas corpus petition under 28 U.S.C. § 2254. (Rec. Doc. No. 14). After considering the Report, objections, and applicable law, and for the reasons pronounced below,

**IT IS ORDERED** that Petitioner's objections to the Magistrate's Report and Recommendation be and are hereby **OVERRULED;** the Magistrate's Report and Recommendation is hereby **ADOPTED**, and Petitioner's petition for federal habeas corpus review is **DISMISSED WITH PREJUDICE** as without merit.

<u>PROCEDURAL HISTORY</u>

On February 10, 2001, Petitioner, George Lee, a former New Orleans police officer, was convicted of five counts of forcible rape and three counts of second-degree kidnapping. (Rec. Doc. No. 14 at 10). At Petitioner's first trial, he was tried on one count of sexual battery, two counts of second-degree kidnapping and one count of extortion. *Id.* at 2. The jury found him not

1

guilty of extortion and could not agree to the other charges. *Id.* Petitioner's second and third trials were mistrials due to prosecutorial misconduct. *Id*. at 2-4.

Following Petitioner's conviction at his fourth trial, he was sentenced on March 13, 2001 to 30-years imprisonment for each of three counts of forcible rape, 25 years for one count of forcible rape, five years for one count of forcible rape, and 10 years for each of the counts of second-degree kidnapping. (Rec. Doc. No. 14 at 11). Petitioner's sentences are concurrent and without the possibility of parole, probation or suspension of sentence. *Id.* He is currently incarcerated at the David Wade Correctional Center in Homer, Louisiana. *Id.*

On April 2, 2003, the Louisiana Court of Appeals for the Fourth Circuit affirmed Petitioner's conviction. *Id.* The Louisiana Supreme Court denied his writ application on October 10, 2003, and his conviction became final on January 8, 2004, as he did not file a writ to the United States Supreme Court. *Id.*

Petitioner, through counsel, filed an application for post-conviction relief on October 8, 2004, which was denied following hearings on April 3 and 7, 2008. (Rec. Doc. No. 14 at 12). On appeal, the Louisiana Fourth Circuit also denied relief, noting many of Petitioner's arguments had been raised on direct appeal and did not warrant reconsideration. *Id.* The Louisiana Supreme Court denied Petitioner's writ March 12, 2010. *Id.* at 13.

2

On June 9, 2010, Petitioner, through counsel, filed the instant petition for federal habeas corpus relief. *Id.* Magistrate Roby issued a Report and Recommendation recommending dismissal of the instant petition with prejudice. *Id.* at 47. Petitioner, through counsel, timely filed his objections to the Report on May 15, 2011, requesting review by this Court. (Rec. Doc. No. 15).

## CONTENTIONS OF MOVANT

Petitioner's objections to the Report and Recommendation assert the same four grounds for relief contained in his original petition: 1) the State failed to give notice of intent to introduce prejudicial and other crimes evidence at trial; 2) prosecutorial misconduct permeated the proceeding with unfairness, rendering the conviction unreliable; 3) he was denied effective assistance of counsel; and 4) the State failed to provide exculpatory evidence, despite discovery requests, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Rec. Doc. No. 14 at 13-14). Petitioner contends the cumulative effect of these claims amounts to a per se violation of his constitutional rights. (Rec. Doc. No. 15 at 1-2, 35).

## CONTENTION OF RESPONDENT

Counsel for respondent did not file a response to Petitioner's Objections to the Magistrate's Report.

## <u>LAW AND ANALYSIS</u>

### A. Standard of Review

Petitioner's original writ for federal habeas corpus review under 28 U.S.C. § 2254 was filed with this Court on June 9, 2010. As this is after the effective date of April 24, 1996, for the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applicable to habeas corpus petitions, his petition is governed by § 2254 as amended by AEDPA. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998)(citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The standard of review under § 2254(d)(1), as amended by AEDPA, in questions of law and law and fact provides deference to a state court's determination be given unless it was, "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  A state court is contrary to federal law if its conclusion is opposite that of the Supreme Court on a question of law or if it decides a case differently than the Supreme Court on a "set of materially indistinguishable facts."  *Hill v. Johnson*, 210 F.3d 481, 485 (5th. Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  An unreasonable application of federal law in a state court's decision is one that is "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).  In determinations of fact, § 2254(d)(2) stipulates a state court's decision will be

4

presumed court unless it was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).

**B. Notice of Other Crimes Evidence**

Petitioner claims his constitutional right of due process was violated when the State was allowed to introduce evidence of other crimes at trial. (Rec. Doc. No. 15 at 3). Specifically, Petitioner contends Magistrate Roby applied the wrong test to his claim of inadequate notice of the State's intent to use testimony of two witnesses on an extortion charge that Petitioner had been acquitted of in his first trial, which amounted to the introduction of inadmissible other crimes evidence. *Id.* at 5. To prevail on this claim, Petitioner must show the state court's decision was contrary to or an unreasonable application of Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

Errors of state law, including evidentiary errors, are not cognizable in a federal habeas corpus review unless the error rises to the constitutional dimension in its violation of due process such that the proceeding is fundamentally unfair. *See Lisenba v. People of the St. of Ca.*, 314 U.S. 219, 236-37 (1941); *See also United States v. Derden*, 978 F.2d 1453, 1458 (5th. Cir. 1992). It is not enough to support federal habeas review that a state's evidentiary laws were not followed; evidentiary errors are fundamentally unfair only if it is "material in the sense of

a crucial, critical, highly significant factor." *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir. 1976).

The Louisiana Court of Appeal for the Fourth Circuit found the evidence was admissible under Louisiana law as an integral part of the crime charged on Petitioner's direct appeal. (Rec. Doc. No. 14 at 17-18).  On post-conviction review, that same court noted admissibility was addressed on direct appeal and did not warrant reconsideration. *Id.*  The Louisiana Fourth Circuit relied upon the same grounds for denying Petitioner's post-conviction relief as it did in denying his direct appeal.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

Petitioner argues that, had Magistrate Roby followed the three-part test articulated in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) regarding admissibility of other crimes evidence, the State's use of the extortion charge would have been found inadmissible evidence under Rule of Evidence article 404(b).  (Rec. Doc. No. 15 at 7).

The *Beechum* test for admissibility of other crimes evidence is:

> 1) evidence is relevant to an issue other than defendant's character, 2) evidence is more probative than prejudicial and 3) evidence is relevant to the issue of intent is valid only if offense was actually committed and committed by the defendant.

582 F.2d 898 at 911-13.  Petitioner contends he was acquitted of extortion in an earlier trial, and as neither extortion nor abusing police resources to stalk a witness is an element of

forcible rape, the only reason for admittance of the evidence was to show bad character. (Rec. Doc. No. 15 at 7-9).

However, the appropriate inquiry for federal habeas corpus review is not whether in the court's independent judgment the evidence should or should not have been admitted, but whether its admission rises to the level of a constitutional violation by being fundamentally unfair. *Hills v. Henderson*, 529 F.2d at 401; *See also Price v. Vincent*, 538 U.S. 634, 641 (2003)(quoting *Woodford v. Viscotti*, 537 U.S. 19, 24-25 (2002)).

Louisiana law states while other crimes evidence is generally inadmissible to show a defendant's bad character, such evidence is admissible "when it relates to conduct that constitutes an integral part of the act or transaction that is part of the subject of the present proceeding." La. Code Evid. Art. 404(b)(1). The Louisiana Fourth Circuit found and the Magistrate's Report reiterated the other crimes evidence was admissible in Petitioner's trial. Regardless of Petitioner's acquittal, the victims testified to a single event that began by being stopped by a man they believed to be a corrupt cop asking for a monetary bribe, then being separated from their male companions and finally raped by the Petitioner before being released. (Rec. Doc. No. 14 at 20). The extortion testimony is a necessary, integral part of the victims' testimony to that single event involving the Petitioner. *Id*. Similarly, evidence

that Petitioner abused police resources by investigating a witness is relevant to his second-degree kidnapping charges because Petitioner allegedly held that witness his police car while Petitioner sexually assaulted the witness's companion. *Id.*

However, even if the evidence was erroneously admitted, Petitioner has not demonstrated the error was "a crucial, critical, highly significant factor" to the verdict, thus making the trial fundamentally unfair. *Hills*, 529 F.2d at 401. Petitioner makes only a conclusory statement of testimony tending to show a former police officer committing other crimes and having "a total disregard for the rule of law was greatly damaging to Petitioner's character defense." (Rec. Doc. No. 15 at 8). Therefore, this claim fails to show the state court's decision was contrary to or an unreasonable application of Supreme Court precedent.

### C. Prosecutorial Misconduct

Petitioner urges prejudicial action and prosecutorial misconduct during his trial had the cumulative effect of denying him due process. (Rec. Doc. No. 15 at 10). Specifically, Petitioner contends the prosecutor inappropriately referenced his declining to testify in her closing remarks. *Id.* He also contends the State caused an exculpatory witness to be unavailable for trial. *Id.* at 14. He lastly asserts the prosecutor disregarded courtroom procedure by continuing to talk

over objections. *Id.* at 16. Petitioner raised these claims in his petition for post-conviction relief, however no lower courts have specified reasons for denying these claims. (Rec. Doc. No. 14 at 21). In order to prevail on this claim, Petitioner must demonstrate the state court's decision was contrary to or an unreasonable application of federal law.

### 1. **Prosecutor's Closing Arguments**

Prosecutorial misconduct, including inappropriate closing arguments, does not warrant federal habeas corpus relief unless it so infects the trial with unfairness as to deny the defendant due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The petitioner must demonstrate "the misconduct is persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988). A Fifth Amendment right not to be compelled to be a witness against himself is violated where a prosecutor references his silence to the jury. *See Griffin v. California*, 380 U.S. 609, 612-13 (1965). A prosecutor's comment can be an impermissible reference to the defendant's decision regardless of the prosecutor's intent. *Samuels v. United States*, 398 F.2d 964, 968 (5th Cir. 1968), cert. denied, 393 U.S. 1021 (1969).

The specific statement of the prosecutor to which Petitioner points was: "They promised you that you would hear the words from

the good Officer George Lee and the words just don't make sense."
(Rec. Doc. No. 15 at 11).  Defense objected and moved for a
mistrial.  In chambers, the prosecutor clarified her comment was
in reference to the defendant's statements played during trial,
while the defense counsel asserted it was a reference to
defendant not taking the stand.  *Id.* at 12.  Defense counsel
argued that the prosecutor said, "George Lee's mouth," not
"George Lee's statement," and asked for an admonition to the jury
as an alternative to a mistrial.  *Id.*  Petitioner contends under
Louisiana law, the judge was bound to either grant a mistrial or
the defense's request for a jury admonition when remarks are
made, directly or indirectly, to a defendant's failure to
testify.  La. C. Cr.P. art. 770.  However, the judge is only
bound where the remarks concern the defendant's failure to
testify, and here the prosecutor's remarks did not so qualify.
Under the test in *Samuels*, the prosecutor's manifest intent was
to reference  defendant's statements played during trial and not
his refusal to testify.  398 F.2d at 968.  Further, despite
defense counsel arguing that prosecutor had said "George Lee's
mouth," what the prosecutor actually said was the jury would hear
the words from Petitioner, which was followed up with, "and the
words just don't make sense."  (Rec. Doc. No. 15 at 11).

Under the second test in *Samuels*, for the second half of the
prosecutor's statement to have any meaning, the jury would have

10

had to "naturally and necessarily" construe the comment as a reference to words from already heard Petitioner, meaning his statement. 398 F.2d at 968. The prosecutor's statement, taken as a whole, can "naturally and necessarily" be construed to support the contention that it was made in reference to the Petitioner's played back statements. Therefore, Petitioner failed to show that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent.

### 2. **State Made Witness Unavailable**

Petitioner contends Raymond Brown, who gave a physical description of the victims' assailant that did not match Petitioner, was in custody on armed robbery charges leading up to Petitioner's trial but was released by the State after those charges were refused in a deliberate effort to keep him from testifying. (Rec. Doc. No. 14 at 24). Defense counsel admitted Brown could not be located, but his statement was played at trial. *Id.*

As stated above, for a claim of prosecutorial misconduct to be cognizable in a federal habeas corpus petition, the petitioner must show that the acts so permeated the trial with unfairness so as to deny his due process rights. *Darden*, 477 U.S. at 181. Petitioner offers no evidence in his objection that the State intentionally thwarted the defense in its attempt to bring Brown as a witness. Instead, Petitioner argues the State "curiously"

11

refused Brown's charges on the same day as the start of Petitioner's trial, yet before Brown's scheduled Rule to Show Cause date. (Rec. Doc. No. 15 at 14). This is speculation into the timing of the State's refusal of the charges and does not meet the burden of showing a violation of due process. Petitioner asserts this claim should not be dismissed given that there had been prior mistrials because of prosecutorial misconduct, thereby making the State's treatment of Brown suspect. *Id.* at 15. However, the Louisiana Fourth Circuit found that, because the jury still heard Brown's recorded statement, the defense had not been denied any exculpatory material. *Id.* Therefore, Petitioner has not shown any prejudice due to prosecutorial misconduct nor that his trial was unfair, so he is not entitled to relief on this claim.

3. **State Improperly Disregarded Courtroom Procedure**

Petitioner contends the prosecutor ignored courtroom procedure and continued to speak over defense objections, which had the cumulative effect of rendering his trial unfair. (Rec. Doc. No. 15 at 15). Alleged prosecutorial misconduct must be "persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Darden,* 477 U.S. at 181; *Jones*, 864 F.2d at 356. Cumulative effect of prosecutorial misconduct warrants federal habeas corpus relief only when the individual errors

12

"involved matters of constitutional dimension rather than mere violations of state law, errors were not procedurally defaulted for habeas purposes, and errors so infected entire trial that resulting conviction violates due process." *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992).

Petitioner cites three instances during which the prosecution ignored defense objections. (Rec. Doc. No. 15 at 15). An instance of talking over an objection as an individual error does not rise to the level of a "constitutional dimension" as demanded in *Derden*. 978 F.2d at 1454. Further, these three instances of misconduct cumulatively were not "persistent and pronounced" nor was the evidence of guilt, including the testimony four victims at trial and three photo lineup identifications of Petitioner, so insubstantial that the conviction "would not have occurred but for the remarks." *Jones,* 864 F.2d at 356. Therefore, Petitioner failed to demonstrate the state court's decision was contrary to or an unreasonable application of federal law.

**D. Ineffective Assistance of Counsel**

Petitioner claims he was denied effective assistance of counsel in his trial and appellate counsel. The Louisiana Fourth Circuit denied this claim as not rising to the standard of ineffective assistance of counsel as laid out in *Strickland v. Washington*, 466 U.S. 668 (1984). (Rec. Doc. No. 14 at 27).

13

Specifically, the court noted it was clear the record had been "scoured extensively and carefully looking for any hint that the relator's counsel was less than perfect. However, that is not the standard for a claim of ineffective assistance of counsel." *Id*. In order to prevail on this claim, Petitioner must show this finding was contrary to, or an unreasonable application of, the *Strickland* standard.

Petitioner alleges his trial counsel, Robert Jenkins, was ineffective on numerous points, including: he failed to prepare for trial, failed to timely object, failed to follow up on objections and press court to rule on them, failed to state grounds for objections, elicited prejudicial testimony against Petitioner and failed to preserve the record for appeal. (Rec. Doc. No. 15 at 17-18). An ineffective assistance of counsel claim requires the petitioner to demonstrate 1) counsel's performance was deficient and 2) the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

The first prong of *Strickland* requires that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. High deference must be given to the presumption that counsel's performance "falls within the wide range of reasonable professional assistance." *White v. Thaler*, 610 F.3d 890, 898 (5th Cir. 2010) (quoting *Strickland*, 466 U.S. at 689). Deference does not preclude relief in a federal habeas corpus review, but

14

an attorney's strategic choices based on investigation and knowledge of relevant facts and law as supported by the record are "virtually unchallengeable." *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003); *Strickland*, 466 U.S. at 491. As such, counsel's tactics must be examined at the time of the conduct, taking into account the circumstances and particular set of facts known at that time, and without the distortion of hindsight. *Sawyer v. Butler*, 848 F.2d 582, 587 (5th Cir. 1987).

To prove the prejudice prong, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Counsel's errors must be so serious as to deprive the defendant of a fair trial with a reliable result. *Id.* at 687. Petitioner must affirmatively prove the existence of prejudice and not merely allege it. *Sawyer*, 848 F.2d at 587. Conclusory allegations of prejudice do not meet the standard set out by *Strickland*. *Anderson v. Collins*, 18 F.3d 1208, 1220 (5th Cir. 1994).

## 1. Counsel unprepared for trial

Petitioner asserts Jenkins was not prepared for trial and plainly admitted his own ineffectiveness on record. (Rec. Doc. No. 15 at 19). However, Petitioner offers no evidence to rebut Magistrate Roby's finding that Jenkins's alleged unpreparedness was a tactical point. (Rec. Doc. No. 14 at 31).

15

On January 29, 2001, Jenkins had filed a federal habeas corpus petition and a motion to stay the state court proceedings, which was set for trial on February 6, 2001. (Rec. Doc. No. 14 at 30). The motion to stay was denied that day, but when called to trial, Jenkins moved for a continuance on the basis of the pending petition, which was denied. *Id.* at 31.

At this point, Petitioner alleges Jenkins admitted his own ineffectiveness when he stated he thought it would be ineffective to move forward with Petitioner's case because he had prepared for the continuance and the pending habeas petition. (Rec. Doc. No. 15 at 19). Petitioner urges that because defense counsel had been through three previous mistrials with Petitioner and the final trial was known well in advance, he should have been prepared. *Id.* Jenkins's testimony at the post-conviction evidentiary hearing explains why asked for the continuance: "I wanted to see what would happen in terms of the barring of this prosecution based on what happened earlier." (Rec. Doc. No. 15 at 19). This not evidence unpreparedness but supports Magistrate Roby's assertion that Jenkins was attempting to delay the trial so the habeas corpus petition, which was not denied until March 2, 2001, could be reviewed. (Rec. Doc. No. 14 at 31). As stated above, an attorney's strategic choices based on investigation and knowledge of relevant facts and law and supported by the record are "virtually unchallengeable." *Strickland*, 466 U.S. at 491.

Further, even if Jenkins was unprepared, Petitioner does not make any showing as to how this prejudiced him at trial, thus failing the second prong of the *Strickland* test.  466 U.S. at 694.

### 2. Failure to make timely objections, follow up on objections and press Court to rule on objections

Petitioner asserts Jenkins failed to follow up on sustained objections and press the court for rulings on objections.  (Rec. Doc. No. 15 at 20).  Specifically, Petitioner objects to the finding by Magistrate Roby that he "does not demonstrate that any of the questions or testimony or argument indicated were legally inappropriate or inadmissible to establish that further pursuit was warranted."  *Id*.  However, Petitioner does not offer any support to rebut this finding.  Petitioner states defense counsel failed to object a second time when the prosecutor asked the same question as that to which the trial judge had sustained an objection, and then he cites the trial transcript of three examples.  *Id.*  Aside from this one-sentence summary of three instances of trial proceedings in which the prosecutor repeated an objected-to question, Petitioner does not even allege prejudice from these alleged failings as required by the second prong of *Strickland*.  466 U.S. at 694.  Similarly, Petitioner restates in one sentence Jenkins failed to seek rulings on objections and then cites to examples in the transcript.  (Rec. Doc. No. 15 at 20).  However, as stated above, conclusory

17

allegations of  prejudice do not support a claim for ineffective assistance of counsel.  *Anderson*, 18 F.3d at 1220.  Petitioner's cursory synopsis of the trial proceeding  in which this Court is not shown how the alleged failure to seek rulings prejudiced him does not rise to the level of proof demanded in *Strickland*.

### 3. Failure to state grounds for mistrial

Petitioner alleges for his third claim of ineffective assistance of counsel that Jenkins moved several times for mistrials but did not give grounds.  (Rec. Doc. No 15 at 20). Magistrate Roby found Petitioner "had not demonstrated where any of these instances actually posed a ground for a mistrial," and the trial judge summarily denied the requests without allowing Jenkins further opportunity to state his reasons.  (Rec. Doc. No. 14 at 35).  In his objection, Petitioner details two instances in which he alleges Jenkins was deficient in not stating grounds, but they only serve to further strengthen Magistrate Roby's finding.

In the first example, Jenkins moved for a mistrial without stating reasons after a victim's attorney testified the victim was afraid of Petitioner.  (Rec. Doc. No. 15 at 21).  The judge summarily denied the motion, and Jenkins's subsequent objection was summarily overruled.  *Id.*  Petitioner contends Jenkins "certainly had time to say on what grounds he moved for a mistrial."  *Id.*  However, it is unreasonable to read such an

18

opportunity into a trial transcript that cannot reflect passage of time and more strongly reflects Magistrate Roby's finding that Jenkins was not given opportunity to state grounds before his motion was summarily denied.

In his second example, a victim's boyfriend testified Petitioner had harassed her at "the club," to which Jenkins immediately objected and to which the trial judge instructed "move on." (Rec. Doc. No. 15 at 22). The boyfriend again repeated, "He was harassing..." at which point Jenkins moved for a mistrial. *Id.* The judge again did not give Jenkins opportunity to supply reasons for his motion but instead chose to direct the boyfriend to "move on." *Id.* Jenkins twice interjected in an attempt to keep the jury from hearing testimony alleging the Petitioner harassed a victim, and it is not ineffectiveness on his part that the trial judge chose to direct the witness away from that line of questioning rather than hear argument for a mistrial. Beyond a single conclusory statement of both examples were "highly prejudicial" to the Petitioner, he does not show either example had any conceivable effect on the outcome, let alone a "reasonable probability" the outcome would be different. (Rec. Doc. No. 15 at 22); *Strickland*, 466 U.S. at 694. *Anderson*, 18 F.3d at 1220 (noting conclusory allegations of prejudice do not support a claim for ineffective assistance of counsel).

## 4. Introduced damaging and prejudicial information

Petitioner alleges Jenkins elicited prejudicial testimony regarding charges that had been dropped and other prior bad acts. (Rec. Doc. No. 15 at 23). Specifically, Petitioner contends it was deficient of Jenkins to call Assistant District Attorney George Bourgeois to testify to the screening process of sex crimes. *Id.* Petitioner asserts the jury heard about two additional charges he had been charged with in the first trial - extortion and sexual battery - which increased the impression of Petitioner's bad character. *Id.* Petitioner continues to argue Jenkins could offer at the post-conviction evidentiary hearing no strategic reason for eliciting the testimony. *Id.*

Magistrate Roby found Jenkins's strategy with regard to the testimony of Bourgeois was to portray the Petitioner as the "victim of a prosecutorial witch-hunt." (Rec. Doc. No. 14 at 36). Further questioning shows Jenkins attempted to elicit why the charges were bumped up to rape after the first mistrial and why one second-degree kidnapping charge was dropped. *Id.* High deference must be given to the presumption that counsel's performance "falls within the wide range of reasonable professional assistance," and it is within the range of reasonable trial strategy to attempt to call into doubt the prosecution's screening process when Petitioner was charge higher offense crimes after there was already a mistrial on the lesser

20

charges. *White*, 610 F.3d at 898 (quoting *Strickland*, 466 U.S. at 689). Further, because of the danger hindsight presents in casting legitimate strategy as subsequently unreasonable, counsel's performance must be evaluated at the time of conduct bearing in mind the circumstances known at the time. *Butler*, 848 F.2d at 587. Therefore, the fact Jenkins could not recall at post-conviction evidentiary hearings held in 2008 his exact strategy for a trial more than seven years previous has no bearing on whether he was an effective counsel at trial.

Similarly, Petitioner contends Jenkins elicited damaging testimony from a victim who alleged Petitioner stalked her at her place of employment. (Rec. Doc. No. 15 at 24). Petitioner contends Jenkins was deficient in this regard because he heard the State argue during a pre-trial hearing Petitioner stalked his victims, and because during post-conviction hearings, he could not recall whether he had filed a motion in limine to keep the testimony out. *Id.* Petitioner does not address the fact while he may have heard the State make such an argument during pre-trial, Jenkins did not expect the victim to testify to Petitioner stalking her when he was questioning her, and when she did, he immediately moved for a mistrial, which was denied. (Rec. Doc. No. 14 at 36). Jenkins further recalled at the evidentiary hearing that, with his motion for a mistrial denied, he did not feel he could leave the alleged stalking hanging before the jury,

21

so he continued to question the victim on it in an attempt to address the issue. *Id.* at 37. An attorney's strategic choices are "virtually unchallengeable" if the record supports those choices were reasonable, and the record supports Jenkins' attempt to address a prejudicial issue that unexpectedly came out in testimony was a reasonable strategic choice. *Strickland* at 691.

**5. Failure to preserve the record for appeal**

Petitioner claims Jenkins failed to raise the proper objection to the admission of evidence. Specifically, Petitioner addresses three instances in which Jenkins allegedly raised an improper objection: Jenkins raised a relevance objections rather than an inadmissibility objection to testimony on a shotgun previously ruled inadmissible; Jenkins made relevance objections rather than admissibility objections to other crimes evidence; and Jenkins objected to the form of questions rather than to the admissibility of other crimes evidence to the testimony of two witnesses who claim Petitioner broke into an alleged victim's home weeks after raping her. (Rec. Doc. No. 15 at 25-26).

To the admissibility of the shotgun, even if it was deficient of Jenkins to lodge a relevance rather than an admissibility error, Petitioner does not demonstrate how this prejudiced him. There are no allegations in Petitioner's brief that the jury's hearing of testimony regarding a shotgun in Petitioner's vehicle had any effect on the outcome of his

22

proceedings, meaning Petitioner has not shown the error was so serious as to deprive him of a fair trial with a reliable result. *Strickland*, 466 U.S. at 687.

A similar conclusion is reached with regard to the testimony of Petitioner allegedly breaking into another victim's home. Magistrate Roby's Report does not address this allegation. Petitioner states the testimony was highly unfavorable because it "painted him as a violent stalker and burglar in addition to being an alleged rapist and kidnapper." (Rec. Doc. No. 15 at 26). However, a conclusory allegation of prejudice does not demonstrate a "reasonable probability" that but for the improper objection, the testimony of these two witnesses would have been kept out, and the outcome would have been different. *Strickland*, 466 U.S. at 694; *Anderson*, 18 F.3d at 1220.   This is especially so given the weight of the evidence, including the first-hand accounts of four victims, that supported Petitioner's conviction. *Id.*

Further, it is too speculative of argument that Petitioner was prejudiced in his preclusion from bring this issue on appeal. Petitioner quotes the Louisiana Fourth Circuit decision stating he was precluded from appealing on objections not articulated at trial. (Rec. Doc. No. 15 at 25-26). However, he makes no showing his appellate counsel would have decided to appeal those issues as meritorious had they been preserved. *Smith v. Robbins*, 528

U.S. 259, 288 (2000) (noting generally only when ignored issues on appeal are clearly stronger than those presented, will the presumption of effective counsel be overcome). Nor does he, beyond a conclusory statement that "the incident referred to is other crimes evidence falling within the ambit of 404(b)," establish the alleged other crimes testimony was not within the exception of being integrally related to the crime as discussed above.   Therefore, he fails to establish how he has been prejudiced by the alleged failure to raise proper objections. *Strickland*, 466 U.S. at 694.

It was shown above Petitioner failed to establish the testimony of Petitioner abusing his police resources was inadmissible as other crimes evidence. As such Jenkins was not deficient for failing to raise a frivolous objection. *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (noting counsel is not required to raise futile motions or objections).

### 6. Appellate counsel

Petitioner contends his appointed appellate counsel failed to raise a meritorious issue on appeal.  Appellate counsel is not required to raise every nonfrivolous claim on appeal, and it is a reasonable tactic to raise only those strongest issues with the maximum likelihood of success.  *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989), cert denied, 493 U.S. 970 (1989).  In order to prove ineffective assistance of appellate counsel, Petitioner

24

must show it was objectively unreasonable to not raise the issue on appeal. *See United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). Petitioner must show that, but for the omission of the issue, he would have succeeded on appeal. *Smith*, 528 U.S. at 288.

Petitioner asserts counsel should have raised as an issue an objection at trial to a sex assault kit being submitted through the investigating officer rather than through an examining physician. (Rec. Doc. No. 15 at 27). He cites Louisiana Civil Code of Evidence Article 901 detailing the submission of nonself-authenticating documents as evidence the submission of the sex assault kit by someone not qualified to authenticate it is a meritorious issue for appeal. *Id.* However, as stated above, the test for ineffective assistance of appellate counsel is not whether the issue is meritorious, and Petitioner does not demonstrate in his objections this issue was any stronger than those actually raised by his appellate counsel nor that his appeal would have been successful with its inclusion. *Phillips*, 210 F.3d at 348; *Smith*, 528 U.S. at 288. Petitioner merely asserts the grounds that give the issue merit, however, this does not carry the burden of proof required.

**7. Cumulative error**

Petitioner in his conclusion urges this Court to extend a cumulative error analysis to determine prejudicial effect in

claims of ineffective assistance of counsel as it has for evaluating claims brought under *Brady v. Maryland*. (Rec. Doc. No. 15 at 28). First, as stated above, petitioner has not demonstrated any meritorious claims of ineffective assistance of counsel, so there is no need to apply a cumulative error analysis. Further, the Fifth Circuit has already spoken with regard to the status of the cumulative error theory in this circuit: "federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where 1) individual errors involved matters of constitutional dimension rather than mere violations of state law; 2) the errors were not procedurally defaulted for habeas purposes; and 3) the errors 'so infected the  entire trial that the resulting conviction violates due process." *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992). While Petitioner quotes from other circuit decisions that did adopt a cumulative error analysis for ineffective assistance of counsel claims, those decisions are not controlling over this Court. (Rec. Doc. No. 15 at 28). Absent a showing to the contrary, the Fifth Circuit's decision in *Derden* is controlling.

Petitioner concludes his objections to Magistrate Roby's findings on his ineffective counsel claims with a recitation of his allegations and a conclusory statement that their cumulative effect prejudiced him. However, as stated above, conclusory allegations of prejudice do not meet the *Strickland* standard.

*Anderson*, 18 F.3d at 1220.  The Louisiana Fourth Circuit found "less than perfect" performance on the part of Petitioner's counsel did not meet the *Strickland* standard.  (Rec. Doc. No. 14 at 27).  Petitioner has failed to show that determination on this issue is contrary to, or an unreasonable application of, that U.S. Supreme Court precedent.

### E. Brady Violations

Petitioner contends the State failed, despite pretrial orders to the contrary, to provide exculpatory evidence to the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and he was denied a fair trial as a result.  (Rec. Doc. No. 15 at 30).  The Louisiana Fourth Circuit noted in its post-conviction denial, "By the conclusion of the fourth and final trial, we do not find that the defense was denied any exculpatory material." (Rec. Doc. No. 14 at 41).  In order to succeed on this claim, Petitioner must show the court's decision was contrary to, or an unreasonable application of, the U.S. Supreme Court standard set forth in *Brady*.

Suppression of evidence that is material to a defendant's guilt or punishment violates due process, "irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  To succeed on a claim of a *Brady* violation, the evidence 1) must be favorable to the defendant as exculpatory or impeaching, 2) it must have been suppressed by the prosecution either

27

intentionally or inadvertently, and 3) prejudice must have ensued. *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). The evidence must be material as to its exculpatory or impeachment value, meaning "there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *See also DiLosa v. Cain*, 279 F.3d 259, 263 (5th Cir. 2002) (noting "a lack of faith in the result is sufficient"). However, the duty to disclose exculpatory evidence does not require the State to point out favorable evidence already in the defense's possession or that could be obtained through due diligence. *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997).

**1. Failure to disclose two statements from witness**

Petitioner claims the prosecution withheld two statements given to police by witness Marvin Pepp. (Rec. Doc. No. 15 at 32). Jenkins while questioning Pepp requested at trial the court order the statements to be turned over, however, Magistrate Roby's Report shows in the record the prosecution then reminded the court they already had been turned over. (Rec. Doc. No. 14 at 44). As stated earlier, the prosecution is under no obligation to point to favorable evidence already in the defense's possession, and as Petitioner does not offer any evidence the prosecution falsely stated the statements had already been turned

28

over, this is not a *Brady* violation. *Rector*, 120 F.3d at 558-59. Further, even if the statements had been withheld in violation of *Brady*, Petitioner fails to demonstrate their materiality and states only they "most likely contained inconsistencies." (Rec. Doc. No. 15 at 32). Without any further explanation of what the alleged inconsistencies are or their exculpatory value, Petitioner fails to show "a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682.

Petitioner argues in the alternative if Jenkins had the statements and didn't use them, then it is example of ineffective assistance of counsel. (Rec. Doc. No. 15 at 33). Petitioner supports this contention by quoting Jenkins's post-conviction hearing testimony during which he said that if he had the statements during the first trial, Petitioner likely would have been acquitted. *Id.* at 32-33. However, as stated previously, Petitioner failed to demonstrate these statements had material exculpatory value. Further, during the first trial, Petitioner faced entirely different charges including charges in which this witness - Marvin Pepp - was a victim. Without any more indication from Petitioner as to the nature of the statements, Jenkins's testimony at best speculates they had exculpatory value to the first trial and is not evidence of a prejudicial error as required to succeed on an ineffective assistance of counsel

claim. *Strickland*, 466 U.S. at 694.

**2. Failure to disclose handwritten statement from victim**

Petitioner asserts the State withheld a hand-written statement given to police by one of the victims. (Rec. Doc. No. 15 at 33). The victim admitted during testimony giving the statement to law enforcement, to which Jenkins requested the court to order that it be turned over. *Id*. However, both Petitioner and Magistrate Roby's Report show the victim reminded Jenkins she had discussed the hand-written statement during the first trial. *Id.;* (Rec. Doc. No. 14 at 44). Magistrate Roby's Report further points out the victim also testified her hand-written and taped statement, which the defense had in its possession, were the same. *Id.* Petitioner fails to make any showing the non-disclosure was at all prejudicial given the hand-written statement is duplicitous of the taped statement in the defense's possession. Thus, Petitioner fails to satisfy the third prong of the test for a *Brady* violation. *Strickler*, 527 U.S. at 281-82. Petitioner instead suggests Jenkins's inability to recall whether he received the statement along with his testimony regarding his "tremendous" caseload at the time evidence his lack of preparation and thus ineffective assistance of counsel. (Rec. Doc. No. 15 at 34). However, as stated above, Petitioner fails to demonstrate that the hand-written statement was anything other than a copy of the taped statement already in

30

the defense's possession. Without this showing, Petitioner fails to show any error on Jenkins's part prejudiced him as required in *Strickland* for an ineffective assistance of counsel claim.   466 U.S. at 694.

As Petitioner failed to show the state court's determination was contrary to, or an unreasonable application of, the U.S. Supreme Court precedent in *Brady* on either of his suppression of evidence claims, he is not entitled to relief.

New Orleans, Louisiana, this 21ST day of July, 2011.


_____
UNITED STATES DISTRICT JUDGE